# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL H.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 21-1295-JWL |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits[2] pursuant to sections 1602 and 1614, Title XVI of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.   Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] Plaintiff also applied for Disability Insurance Benefits under Title II of the Social Security Act but at the hearing he amended his alleged disability onset date and thereby waived his Title II application. (R. 16).

Plaintiff protectively filed an application for SSI benefits on November 20, 2019. (R. 16, 262, 190). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims "[t]he ALJ failed [properly to] assess [his] allegations of limitations in standing and walking related to the severe impairment of tachycardia as required by SSR 16-3p," and as a consequence thereof failed "to create an RFC [(residual functional capacity)] supported by substantial evidence." (Pl. Br. 7).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

**II.     Discussion**

Plaintiff points to his testimony to support his argument.  He testified his tachycardia limited him to walking 15 to 20 minutes at a time, standing for 15 minutes, and sitting for no more than 30 minutes.  (Pl. Br. 7).  He testified "walking 180 feet roundtrip to take out the trash caused him to be tired."  Id. (citing R. 50).  He testified to "episodic symptoms related to tachycardia lasting from two hours to multiple days where he needed to spend the day sitting around due to dizziness, sweating, and difficulty breathing."  Id. at 7-8 (citing R. 52).  He argues the ALJ generally assessed his allegations but "only considered the consistency of his allegations with 'total disability.'"

4

(Pl. Br. 8) (quoting R.22).  He argues the ALJ did not "assess the consistency of these allegations with the record supporting no more than sedentary work" and thereby "violated the requirements of SSR 16-3p by failing to explain why [Plaintiff]'s allegations of limitations in standing and walking were inconsistent with the record."  Id.

Plaintiff points out that Social Security Ruling (SSR) 16-3p clarifies that an "ALJ should assess the credibility of an individual's symptoms and not their character."  Id. (citing 2016 WL 1119029 (SSA March 16, 2016)).  He noted the Tenth Circuit's holding

> that its approach is consistent with SSR 16-3p, which emphasizes the insufficiency of conclusory statements and recitations of factors and the ruling[']s instruction as to how the "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."

Id. (quoting Brownrigg v. Berryhill, 688 F. App'x 542, 546 (10th Cir. 2017)).

He argues two reasons the ALJ's consideration of his allegations are insufficient. First, although the ALJ

> did provide an analysis of the record, none of that analysis specifically addressed allegations of limitations in the ability to stand and walk throughout the workday.  Second, the reasons the ALJ gave for finding [Plaintiff]'s allegations of "total disability" inconsistent with the record were not actually inconsistent with the alleged limitations in standing and walking.

(Pl. Br. 9).  He argues, "The ALJ's failure to specifically address allegations of limitations in standing and walking violated the Ruling" which

> explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and

5

any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."

(Pl. Br. 9) (quoting 2017 WL 5180304, at *10 (SSA Oct. 25, 2017)).³

Plaintiff points to two cases from this court in which the court remanded because even though it found the ALJ had provided a fair and appropriate summary of the evidence in an even-handed manner it found the decision did not identify the inconsistencies upon which the ALJ relied to discount the claimant's allegations. Id. at 10 (citing Tim Dean P. v. Kijakazi, Civ. A. No. 21-1044-JWL, 2022 WL 715088, at *4 (D. Kan. Mar. 10, 2022); and Stephanie Jean S. v. Kijakazi, Civ. A. No. 20-1349-JWL, 2022 WL 204244, at *4 (D. Kan. Jan. 24, 2022)).  He points to another case in which he argues the ALJ found factors which "supported an RFC for no more than light work, but he did not support disabling limitations," but the court held that each of the ALJ's "'findings is an inconsistency revealed by the record evidence dealing directly with, and tending to discount, Plaintiff's allegations of disabling pain.'" Id. at 11 (quoting Lisa C.F. v. Kijakazi, Civ. A. No. 20-1295-JWL, 2022 WL 612449, at *6 (D. Kan. Mar. 2, 2022)).  He argues this case is more like the case of Tim Dean P. and the case of A.B. v. Saul, Civ. A. No. 20-1114-SAC, 2020 WL 7714408, at *3 (D. Kan. Dec. 29, 2020) than the case of Lisa C.F. because the ALJ's decision here lacks explanation for omitting any

---

³ Plaintiff's citation to SSR 16-3p is different than the citation by the Tenth Circuit in Brownrigg.  This is because the SSA republished the Ruling on October 25, 2017 with some technical changes relating to the applicable date of the Ruling and updated citations to reflect revised regulations.  2017 WL 5180304, at *1.  As relevant here, the two iterations are identical, and in further citations the court will use either citation.

6

limitation in standing and walking [despite] finding tachycardia severe at step two. (Pl. Br. 11). He argues,

> The ALJ's error here is even more problematic than in Tim Dean P. and the issue in Lisa C.F. because [Plaintiff here] didn't need to prove a complete inability to work any job in the national economy. Instead, he needed only to prove that he could perform no more than sedentary unskilled work and he would be found disabled under the Medical-Vocational Guidelines.

Id. He suggests error, moreover, because the ALJ's reasons for discounting Plaintiff's allegations did not show an inconsistency with Plaintiff's specific alleged limitations in standing and walking. Id.

Plaintiff quotes the ALJ's finding "the objective diagnostic testing, the clinical signs and findings, and his limited treatment history is inconsistent with disabling tachycardia," and argues, "the ALJ only addressed the consistency of the record with allegations of 'total disability,' not specific limitations in standing and walking that may or may not be disabling on their own." Id. at 12. He argues it would be improper post hoc rationalization for the court to find such inconsistencies for the Commissioner. Id. (citing Tim Dean P., 2022 WL 715088, at *4).

Plaintiff argues,

> The ALJ's failure to assess allegations of limitations in the ability to stand and walk harmed [Plaintiff] because he subsequently failed to consider application of the Medical-Vocational Guidelines. It is unclear that the ALJ contemplated the need for such an assessment at all. The ALJ acknowledged that [Plaintiff] was 49 years old, defined as a younger individual, as of the amended disability onset date. (Tr. at 24). He never acknowledged, however, that [Plaintiff] turned 50 years old a year and a half prior to the unfavorable decision and just one month after the amended disability onset date.

7

(Pl. Br. 13-14). Plaintiff argues the ALJ's failure to assess Plaintiff's specific allegations of limitations in standing and walking which were "potentially limiting" to sedentary work "tainted his step five evaluation by failing to consider application of the Medical-Vocational Guidelines" because a limitation to sedentary work after age 50 would have required finding him disabled in the circumstances. Id. at 14. Plaintiff acknowledges an ALJ need not provide a factor-by-factor analysis of an allegation of symptoms but argues he must "consider a claimant's allegations and adequately explain why those allegations are either consistent or inconsistent with the record." Id. (citing Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000); and SSR 16-3p, 2016 WL 1119029, at *9). Plaintiff argues he need only prove he cannot perform sedentary work. Id.

      The Commissioner argues the RFC assessed was supported by substantial evidence (Comm'r Br 10), the ALJ's assessment of a claimant's allegations and his RFC assessment are inherently intertwined; id. at 11 (citing Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009); and the court should accord great deference to the ALJ's evaluation of the claimant's allegations of symptoms. Id. (citing White, 287 F.3d at 910). The Commissioner points to specific evidence discussed by the ALJ in evaluating Plaintiff's allegations of symptoms:

- Plaintiff's medical provider said his sedentary lifestyle played "a big role" in his episodic tachycardia (Tr. 570) and advised him to increase his physical activity (*see* Tr. 785, 788-89, 793, 814, 834)

- an echocardiogram was (mostly) normal (Tr. 760)

- Holter monitoring revealed "only two episodes of symptomatic tachycardia"—with the reported symptoms being just "rapid pulse and tightness in his chest" (Tr. 820-21)

- Plaintiff denied experiencing syncope during his episodes of tachycardia and admitted the episodes generally resolved on their own (Tr. 824)

- when Plaintiff sought treatment for a sustained, symptomatic episode of tachycardia, he declined referral to the emergency room and had a regular heart rhythm when monitored in the clinical setting (Tr. 825)

- Plaintiff was able to do things like take out the trash, care for himself, drive, mow his (front) lawn, do laundry, and wash dishes (Tr. 48-49)

(Comm'r Br. 9-10) (citing R. 22) (underline in Comm'r Br.). The Commissioner argues, "In this case, in evaluating Plaintiff's subjective allegations and RFC, the ALJ properly considered the opinion evidence, Plaintiff's medical treatment, the clinical findings, and his daily activities." Id. at 11 (citing R. 18-24).

She argues Plaintiff's medical treatment records do not record reports of limitations for exercise on the treadmill. Id. 12. She points out his physician's assistant stated his sedentary lifestyle played "a big role" in his episodic tachycardia, the records reveal numerous instances Plaintiff was "instructed to increase his physical activity and exercise," and he nevertheless "did not consistently exercise." Id. She noted his testimony at the hearing of "a sedentary lifestyle that involved sitting on his couch and playing games and watching videos." Id. (citing R. 46, 48). She points out his examinations revealed a normal gait, he was never prescribed an assistive device, and he sought no treatment for tachycardia after December 2020. Id. 13. She argues the objective medical findings do not support Plaintiff's allegations. She noted cardiovascular exams were normal, an echocardiogram was normal, and a Holter monitor recorded just two episodes of symptomatic tachycardia. Id. The Commissioner points

out Plaintiff's ex-wife/roommate noted he had no limitations standing or walking. Id. at 14.

The Commissioner argues the ALJ's consideration of the prior administrative medical findings[4] supports his finding Plaintiff's allegations are not consistent with the record evidence. She points out the state medical consultants found Plaintiff's physical impairments were not severe, but the ALJ found those opinions unpersuasive "because evidence received at the hearing level, including updated medical records, supported a finding that Plaintiff's tachycardia caused more than minimal effect on his ability to engage in work activities." (Comm'r Br. 15) (citing R. 22). She continues,

> While the ALJ found the prior administrative medical findings unpersuasive and Plaintiff's tachycardia to be a severe impairment, the prior administrative medical findings support the ALJ's finding that Plaintiff did not have limitations in standing or walking. In fact, as noted, there is no medical opinion that Plaintiff's physical impairments imposed any limitations in his ability to stand or walk.

Id.

The Commissioner concludes her argument by noting Plaintiff does not cite record evidence corroborating his allegations of difficulty walking or standing, his medical providers did not impose walking or standing limitations but instructed him to increase

---

[4] The court acknowledges the findings of state agency medical or psychological consultants are properly called "prior administrative medical findings," a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review. 20 C.F.R. § 416.913(a)(5). Although the term is broader in scope than a "medical opinion," id. at § 416.913(a)(2), both types of opinion evidence are evaluated for persuasiveness in accordance with the same standard, id. at § 416.920c, and the terms are often used interchangeably. The court follows that practice hereinafter.

10

his physical activity and exercise, and the law does not require greater articulation of his alleged standing and walking limitations.  Id. at 16 (citing Keyes-Zachary v. Astrue, 695 F.3d 1156, 1169 (10th Cir. 2012) (although "the ALJ did not explicitly state 'I find this statement credible' or 'I find this statement not credible for each factual assertion," the ALJ "listed many of [the claimant's] specific factual assertions, often following them by a qualifying statement to indicate where he believed her testimony was contradicted or limited by other evidence in the record"); and Bales v. Colvin, 576 F. App'x 792, 800 (10th Cir. 2014) (an ALJ is not required to identify any specific incredible statements).  She argues Plaintiff has not met his burden to show he is limited to sedentary work and the court should affirm the ALJ's decision.  (Comm'r Br. 17-18).

### A.     The ALJ's Relevant Findings

As relevant here,[5] the ALJ found Plaintiff has a severe impairment of tachycardia. (R. 18) (finding no. 2).  He also found Plaintiff has the impairments of hypertension and obstructive sleep apnea which are not severe within the meaning of the Act and regulations.  Id. at 18-19.  He found Plaintiff's impairments, singly or in combination, do not meet or medically equal the severity of a listed impairment.  Id. 19.  He specifically found Plaintiff's tachycardia does not meet Listing 4.02 and Plaintiff does not contest that finding.  Id.  The ALJ found Plaintiff has the physical RFC for a range of work at all exertional levels limited by an inability to climb ladders, ropes, or scaffolds and a need to avoid concentrated exposure to unprotected heights and hazardous machinery.  Id. 21.

---

[5] Plaintiff also alleged and the ALJ found mental impairments but Plaintiff does not allege error in that regard so the court does not address those findings.

The ALJ found Plaintiff's allegations of symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons discussed below." (R. 21). The ALJ's discussion of Plaintiff's allegations of symptoms, the evidence related to his tachycardia, and the medical opinions of the state agency medical consultants is reproduced in its entirety here:

> In October 2019, the claimant complained of heart palpitations and exhibited tachycardia (Ex. B2F/10). Since that time, the claimant has complained of episodes of tachycardia associated with feelings of cold and clammy skin, sweating, and shortness of breath lasting between 2 hours and 3.5 days at a time. He testified that he is limited to walking 15 to 20 minutes at a time on his treadmill, sitting longer than 30 minutes at a time, and stand[ing] 15 minutes before needing to rest. Although I find the claimant's tachycardia causes some interference in his ability to perform work activities, the record reveals his symptoms are not of such a consistent and continuous nature that they would preclude all work activity.
>
> For instance, in November 2019, an echocardiogram was within normal limits (Ex. B13F/10). In December 2019, he wore a 30 day Holter Monitor, which revealed frequent premature atrial contractions with only two episodes of symptomatic tachycardia with a rapid pulse and tightness in his chest (Ex. B18F/4-5). The claimant also continued to smoke at least one-half pack of cigarettes a day, and in January 2020, a physician noted his sedentary lifestyle has a "big role" in his episodic tachycardia (Ex. B8F/2; B18F/13-14). The claimant denied experiencing syncope with episodes, and he admitted the episodes generally resolve on their own in December 2020 (Ex. B18F/4-9). Despite complaints of sustained symptomatic tachycardia in December 2020, he declined a referral to the emergency room and exhibited a regular rate and rhythm in the clinical setting (Ex. B18F/4-9). Thus, the objective diagnostic testing, the clinical signs and findings, and his limited treatment history is inconsistent with disabling tachycardia.
>
> The claimant's activities of daily living are also inconsistent with total physical disability. The claimant testified he could take the trash out, bathe independently, feed himself, drive to the store and to the doctor, but he spends the day on his couch playing video games on his phone, reading, and watching television. He also reported he could mow the lawn, do

> laundry, and wash dishes (Ex. B19F/20; B4F).  The ability to engage in and complete these activities is inconsistent with total physical disability.
>
> Although the claimant's allegations of total disability are not fully consistent with the evidence, I find the claimant's impairments require a reduction of the residual functional capacity.  Based on the totality of evidence, I find the claimant is capable of performing work at all exertional levels.  However, he cannot climb ladders, ropes, or scaffolds, and he should avoid concentrated exposure to unprotected heights and hazardous machinery.  Weighing all relevant factors, I find that claimant's subjective complaints do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision.
>
> In making this finding, I find the State agency medical consultants' opinions are unpersuasive because evidence received at the hearing level, including updated medical records, reveal the claimant's tachycardia has more than a minimal effect on his ability to engage in basic work activities (Ex. B2A; B3A; B6A; B7A).

(R. 21-22).

The ALJ found Plaintiff "was born on December 23, 1969, and was 49 years old, … on the amended alleged disability onset date." Id. at 24 (finding no. 6) (bold omitted). The ALJ found Plaintiff has only nonexertional (postural, environmental, and mental) limitations and used § 204.00 of the Medical-Vocational Guidelines (20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00) as a framework for decision. Id. at 25-26.  He found the vocational expert's (VE) testimony was consistent with the Dictionary of Occupational Titles (DOT) and supplemented with her experience in vocational placement and found no conflicts. Id. 25.  Based on the VE testimony, and considering Plaintiff's age, education, work experience, and RFC the ALJ concluded Plaintiff could perform work in the economy and is not disabled within the meaning of the Act. Id. at 25-26.

## B. The Applicable Legal Standard[6]

The framework for a proper analysis of a claimant's allegation of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of symptoms; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures the claimant has taken to relieve

---

[6] The cases cited in this section were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from his impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 416.929). Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. Appx. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on April 8, 2021, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 416.929(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. Luna, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); Thompson, 987 F.2d at 1489.

An ALJ's evaluations of a claimant's allegation of symptoms are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving witness allegations. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same). However, "Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in

evaluating the claimant's [allegations of symptoms], the dictates of Kepler are satisfied." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

### C.     Analysis

The ALJ here explicitly applied the legal standard cited above and determined Plaintiff's tachycardia is not disabling. (R. 21-22). As the Commissioner pointed out in her brief and as quoted herein the ALJ provided his reasons for discounting Plaintiff's allegations of disabling tachycardia and cited record evidence supporting those reasons. (R. 22). He applied the correct legal standard and substantial record evidence—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"—supports his determination. More is not required.

Plaintiff's reliance solely on his allegations of standing and walking limitations is misplaced. The ALJ is required by regulations and SSR 16-3p to test Plaintiff's allegations of symptoms and it is fruitless merely to argue "I testified to these limitations" without pointing to record evidence tending to confirm those limitations. Although the decision is clear the ALJ did not accept the standing, walking, and sitting limitations to which Plaintiff appeals, the burden is on Plaintiff and he does not explain or point to record evidence other than his own testimony why he cannot meet the standing/walking and sitting demands of medium work—standing/walking up to six hours in a workday and sitting up to six hours in a workday—even if he is limited to standing/walking 15 to 20 minutes or 180 feet at a time and sitting no more than 30 minutes at a time, all while receiving a fifteen minute break approximately every two hours and based upon the

evidence cited by the ALJ which tends to demonstrate his symptoms are not of the consistent and continuous nature he alleges.  (R. 22).

Plaintiff's appeal to the ALJ's use of the term "total disability" is also without merit.  Plaintiff presented himself as disabled by, among other impairments, tachycardia.  Disability within the meaning of the Social Security Act is defined as "the <u>inability to do any substantial gainful activity</u> by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905 (emphasis added); <u>see also</u> 42U.S.C. § 1382c(a)(3)(A) ("an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months).  The use of the term "total disability," then, emphasizes that disability within the meaning of the Social Security Act and the regulations, unlike many other definitions of disability, requires an inability to do <u>any</u> substantial gainful activity.  That definition applies to individuals of any age.  The fact that an individual 50 or over who is limited to sedentary exertion, can no longer perform past relevant work, and has no transferable skills is presumed disabled does not change the analysis.  20 C.F.R., Pt. 404, Subpt. P. § 201.00(g).  Such a person is considered totally disabled because his limited vocational adaptability limits him from adapting to work within the approximately 200 sedentary occupations when compared to the world of approximately 2,500 occupations comprising all sedentary, light, and

17

medium occupations.  20 C.F.R., Pt. 404, Subpt. P. §§ 201.00 & (g), 202.00, 203.00. Consequently, he is presumed unable to perform any substantial gainful activity.  To refer to an individual over age 50 as <u>not</u> totally disabled means that he is able to perform substantial gainful activity and therefore necessarily implies that he is at least able to perform work at the light exertion level, comprising a world of approximately 1,600 occupations.  <u>Id.</u> § 202.00.  The ALJ's use of the term implies no less and provides no implication that he found Plaintiff capable of sedentary work, though he clearly found him capable of the <u>exertion</u> required by sedentary work.  Moreover, the representative work he relied upon in reaching his decision was all medium exertion level.  (R. 25).

Plaintiff's argument the ALJ "never acknowledged … that [Plaintiff] turned 50 years old a year and a half prior to the unfavorable decision and just one month after the amended disability onset date" (Pl. Br. 13-14), ignores the clear import of the decision at issue.  The ALJ explicitly stated Plaintiff's birthday was December 23, 1969 (R. 24), that he found a significant number of jobs of which Plaintiff is capable after "[c]onsidering the claimant's age" and other relevant factors, <u>id.</u> at 25 (finding no. 9) (bold omitted), that he found "[t]he claimant has not been under a disability, as defined in the Social Security Act, from November 20, 2019, through the date of this decision," <u>id.</u> at 26 (finding no. 10) (bold omitted), and entered the date of the decision on that same page as "April 08, 2021."  <u>Id.</u>  Although the ALJ did not state Plaintiff became 50 years old the month after his alleged onset date, that fact is self-evident on the face of the written decision and the court will not find error in the face of this record absent a much more compelling argument.

18

Plaintiff's argument of error in the ALJ's failure to cite record evidence demonstrating error in Plaintiff's alleged limitations in standing, walking, or sitting must also fail. First, the burden is on Plaintiff to prove his limitations. Second, and more to the point neither the regulations nor SSR 16-3p requires a finding of consistency or inconsistency regarding each alleged limitation. Rather, as Plaintiff stated in his brief,

> the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."

(Pl. Br. 9) (quoting SSR 16-3p, 2017 WL 5180304, at *10). The ALJ provided specific reasons for discounting Plaintiff's allegations, those reasons are consistent with and supported by the record evidence, and they are clearly articulated. (R. 22). As the Commissioner pointed out, the Tenth Circuit has explained an ALJ is not required to identify specific incredible statements. Bales v. Colvin, 576 F. App'x at 800; see also, Keyes-Zachary, 695 F.3d at 1169 (although "the ALJ did not explicitly state 'I find this statement credible' or 'I find this statement not credible for each factual assertion," the ALJ "listed many of [the claimant's] specific factual assertions, often following them by a qualifying statement to indicate where he believed her testimony was contradicted or limited by other evidence in the record").

Plaintiff's appeal to other decisions by this court does not require a different result. In both Tim Dean P. and Stephanie Jean S. this court remanded, not because the ALJ failed to relate inconsistencies with each alleged limitation but because the ALJ failed to identify any inconsistencies relied upon. Tim Dean P., 2022 WL 715088, at *4 ("despite

19

the ALJ's statement she found the allegations inconsistent with the record evidence 'for the reasons explained in [the] decision' (R. 20), the court simply finds no rationale presented in the decision at issue."); Stephanie Jean S., 2022 WL 204244, at *4 ("While the ALJ stated both aspects of the record, he did not identify any inconsistencies he relied upon as a basis to discount Plaintiff's allegations of symptoms."). Plaintiff's appeal to the case of A.B. v. Saul, is to a similar effect. There, the ALJ relied upon the conclusory statement he had "taken into consideration the claimant's subjective complaints regarding her ongoing fatigue and chronic pain and limited the claimant's work to sedentary work," and the court found that assertion showed no inconsistency with Plaintiff's alleged limitations, and remanded for further consideration. 2020 WL 7714408, at *3.

Plaintiff points to no evidence in this case which would compel a different finding than that of the ALJ.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated December 9, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
